# EXHIBIT 1

9/18/2017 5:56 PM
Chris Daniel - District Clerk Harris County
Envelope No. 19508846
By: Rhonda Momon
Filed: 9/18/2017 5:56 PM

2017-61697 / Court: 055

CAUSE NO.____________

| | | |
|---|---|---|
| BLANCA MONICA VILLARREAL, | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| vs. | § | |
| TRANSAMERICA LIFE INSURANCE COMPANY, AND DILIGENCE INTERNATIONAL GROUP, LLC, | § | HARRIS COUNTY, TEXAS |
| *Defendants*. | § | |
| | § | _______ JUDICIAL DISTRICT |

Unofficial Copy Office of Chris Daniel District Clerk

**PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE**

TO THE HONORABLE JUDGE OF SAID COURT:

Blanca Monica Villarreal ("Villarreal"), Plaintiff herein, files her original petition against Defendants Transamerica Life Insurance Company ("Transamerica") and Diligence International Group, LLC ("Diligence International") and request for disclosure. In support of her causes of action, Villarreal would respectfully show the Court the following:

## I. THE PARTIES

1. Villarreal is an individual who resides in Mexico City, Mexico.

2. Transamerica is an insurance company doing business in the State of Texas that may be served through its registered agent for service of process in the State of Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. Its principal office in Texas is in Houston, Texas at 7322 Southwest Freeway #600, Houston Texas, 77074 – (832) 831-6159.

3. Diligence International is a Texas limited liability company whose principal office is located in Dallas County, Texas, that may be served through its registered agent for service of process in the State of Texas, Richard J. Marquez, 16633 N. Dallas Parkway, Suite 600, Addison, Texas 75001.

## II.
## DISCOVERY

4. Discovery Level 2 shall govern this case.

## III.
## CLAIM FOR RELIEF

5. The damages sought are within the jurisdictional limits of this court. Plaintiff seeks monetary relief over $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees.

## IV.
## JURISDICTION AND VENUE

6. This court has subject matter jurisdiction over this cause of action because it involves an amount in controversy in excess of the minimum jurisdictional limits of this Court. No diversity of citizenship exists in this matter.

7. Venue is proper in Harris County because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County. *See* TEX. CIV. PRAC & REM CODE § 15.002(a)(1). Moreover, Transamerica's principal office in this state is in Houston, Texas. Therefore, venue is appropriate under TEX. CIV. PRAC & REM CODE § 15.032.

Unofficial Copy Office of Chris Daniel District Clerk

## V.
## FACTUAL BACKGROUND

8. Villarreal is the named beneficiary under a policy insuring the life of her deceased husband, Eduardo Gonzalez Rosendi ("Gonzalez Rosendi"): Policy No. 43075370 issued by Transamerica (the "Transamerica Policy").

9. The Transamerica Policy was issued on June 25, 2014, with a basic amount of $10,000,000 for a term extending until Gonzalez Rosendi reached the age of 105. The Transamerica Policy was issued by Transamerica's agent in Houston, Harris County, Texas, with full knowledge that the insured was a Mexican national residing in Mexico. All premiums related to the Transamerica Policy were always timely paid.

10. Gonzalez Rosendi properly designated Villarreal as the beneficiary of the policy on or about October 26, 2016. Transamerica has never made any allegation that the beneficiary designation was forged or otherwise improper. Transamerica has also never alleged that it failed to receive notice of the beneficiary designation.

11. On December 29, 2016, Gonzalez Rosendi died as a result of acute myocardial infarction and abdominal sepsis caused by intestinal diverticula. In layman's terms, Gonzalez Rosendi's death was the result of a heart attack that occurred after having undergone abdominal surgery in November 2016, followed by several days in the hospital for post-operative care, and an additional overnight hospital stay in early December 2016 to address post-surgical complaints of chest pain.

12. On or about January 17, 2017, Villarreal filed a claim under the Transamerica Policy through Transamerica's web-portal.

13. On January 23, 2017, Transamerica acknowledged the claim and requested that Villarreal provide a Claimant's Statement; an obituary, if available; an original certified death

Unofficial Copy Office of Chris Daniel District Clerk

certificate; the original policy or certificate for surrender; a HIPAA authorization; a medical history form; and a Foreign Claim Questionnaire. Transamerica also asked Villarreal to complete a W-8 BEN because she is not an American citizen.

14. On January 26, 2017, Villarreal completed the Claimant's Statement and Foreign Claim Questionnaire, signed the HIPAA authorization, and provided them to Transamerica.

15. At some time between Villarreal's making the claim and February 9, 2017, Transamerica retained Diligence International to investigate Gonzalez Rosendi's death. Diligence International appointed Jose Luis Leon Pastor ("Pastor") to conduct the investigation for Diligence International on behalf of its principal, Transamerica.

16. On May 2, 2017, Transamerica denied the claim. Among the reasons cited for denial are: (1) inability to determine that Gonzalez Rosendi is deceased because the physician who certified the death was not his treating physician and did not possess his clinical file; (2) "irregularities" with the manner in which Gonzalez Rosendi's body was "handled and documented;" and (3) allegations that the original application for insurance contained material misrepresentations about the insured's finances.

17. The denial letter reveals that Transamerica and its agent, Diligence International, profoundly misunderstand Mexican law, custom, and practice and failed to conduct a reasonable investigation.

18. For instance, Transamerica's complaints regarding the manner in which the death was certified are meritless. Transamerica cites no basis in Mexican law or practice – or in the Transamerica Policy for that matter – for requiring a death to be certified by the deceased's treating physician who is in possession of his clinical file. In Mexico, it is not the responsibility of the family doctor or treating physician to issue the death certificate, nor is it mandatory that the doctors

Unofficial Copy Office of Chris Daniel District Clerk

issuing the death certificate have a clinical file. Contrary to the unsubstantiated assumptions in the denial letter, in Mexico, any doctor is legally entitled to issue a death certificate. And, the physician who signed the Secretary of Health Death Certificate, Dr. Sergio E. Escorza Arregui ("Dr. Escorza"), *was* one of Gonzalez Rosendi's doctors. Dr. Escorza had treated Gonzalez Rosendi before his death and was familiar with his recent medical history and hospitalizations. In fact, Dr. Escorza signed the proof of death when he arrived at Gonzalez Rosendi's home in response to a call for medical assistance, only to find him already deceased.

19. Transamerica's claims regarding unspecified "irregularities" with the manner in which Gonzalez Rosendi's body was handled and documentation thereof are also baseless. Transamerica indicates that the "Public Ministry" should have been notified of Gonzalez Rosendi's death and attributes the alleged lack of proper documentation to this failure of notification. Transamerica complains that it was unable to obtain copies of a transfer, embalming, or cremation permit as supposedly required by the Public Ministry. Transamerica provides no basis for the assertion that any formal governmental notification was required under the circumstances. To the contrary, in Mexico, doctors who certify a death have no obligation to inform the Public Prosecutor's Office except in cases where the death occurred due to violence or accident or allegedly is linked to the commission of unlawful acts. In Mexico, the practice is for burial to occur within 48 hours of death, so the interim processes are accelerated in comparison with American practice. Notably, throughout this process, Transamerica has never provided *any* evidence that Gonzalez Rosendi is alive.

20. Finally, Transamerica misrepresents that in determining coverage it may consider statements in Gonzalez Rosendi's original application for insurance. The Policy itself, and Texas law specifically prohibits Transamerica from considering the original application where, as here,

Unofficial Copy Office of Chris Daniel District Clerk

premium payments were up to date and the Policy coverage was in effect for over two years. The Policy contains an incontestability clause that, which plainly states that: "Except for nonpayment of premiums, this policy will be incontestable after it has been in force during the insured's lifetime for two years from the date of issue."

21. On May 23, 2017 Villarreal provided Transamerica with more material, including an official death certificate, a marriage certificate, documents confirming her husband had been cremated, funeral paperwork, and paperwork from his doctors.

22. In response, on May 25, 2017, Transamerica acknowledged receipt of these items and promised to "get back in touch" with Villarreal.

23. On June 12, 2017, through counsel in Houston, Villarreal provided Transamerica a comprehensive demand for payment with supporting documents requested by Transamerica, including:

- Cremation Order Number 701 bearing the stamp of the 38th Court in Mexico City;
- Original Certificate of Preservation and Preparation of Cadavers issued by Funerary and Embalming Services HispanoAmericana, S.A. de C.V.;
- Invoice for funerary services with Reference Number 5495 issued by J. Garcia Lopez Funerary;
- Invoice for funerary services under Reference Number FA-396 issued by Rene Morales Cortes; and
- Invoice from Dr. Escorza for medical attention at home and for the processing of a Gonzalez Rosendi's medical death certificate on December 29, 2016.

24. Her counsel in Houston also provided additional documents to demonstrate that the decedent had prior medical complications that ultimately resulted in his death:

- Simple and Contrasted Tomography of Abdomen, indicating among other things an abcess of the descending colon and sigmoid;

Unofficial Copy Office of Chris Daniel District Clerk

- Diagnostic Impression from Radiologist Physician, confirming tomograpic indications;
- Lab Results on Clinic Biochemistry, for blood chemistry 32 elements, indicating several results outside normal range;
- Lab Results of Hematology, for hematic biometry with white blood cell counts indicating several results outside of the normal range and an infectious process;
- Lab Results of Clinical Biochemistry for calcium, magnesium, amylase and lipase, and Hematology for hematic biometry with platelets, indicating several results out of normal range;
- Lab Results on Coagulation for coagulation profile, and Immunology, with 2 results of 6 out of normal range for coagulation indices;
- Lab Results of Clinical Biochemistry for glycosylated hemoglobin (hemoglobin Ale), indicating average glucose well above normal range; and
- Lab Report on Cecal Appendix; Electrocardiographic interpretation.

25. Transamerica acknowledged receipt of this material, but still did nothing and, to date, has yet to pay the claim.

26. On July 23, 2017, through counsel in Houston, Villarreal issued a letter to Transamerica, again, demanding payment of the Transamerica policy death benefits.

27. On July 27, 2017, Transamerica stated that, based on the overwhelming amount of information provided in support of the claim, it was "reopening" the claim and would continue to investigate. It promised to let Villarreal know about its decision "shortly." Yet it still has done nothing.

28. Villarreal has provided Transamerica with formal evidence of her husband's death and cooperated in every respect with Transamerica's investigation. She was interviewed by Transamerica's investigator and has willingly cooperated to provide any information or

Unofficial Copy Office of Chris Daniel District Clerk

documentation that was requested. She has done nothing to prevent Transamerica from conducting a full, reasonable, investigation. Nothing more is required.

29. Moreover, in an effort to resolve this claim prior to litigation, Villarreal arranged for her own investigation, at her own expense. She compiled the documentation Diligence International should have obtained, but which Transamerica apparently never considered. She also compiled medical documentation evidencing Gonzalez Rosendi's illness preceding death, even though Transamerica completely ignored this obvious additional proof of his death. Transamerica has not provided any statements taken by its investigator, reports he made, or other details of his investigation. They have all been kept secret from the beneficiary and, to date, have not been released.

30. Instead of working with Villarreal, Diligence International deployed its team to Mexico and, among other things: (1) improperly and illegally disclosed to third-party witnesses details about the life insurance policies of which Villarreal is a beneficiary, the amounts, and who would receive the funds; and (2) as part of its investigation and questioning, effectively told others that Villarreal was part of a conspiracy to commit insurance fraud and submit a false life insurance claim. Diligence International claims on its website to be able to "carefully, discreetly, and completely get to the bottom of difficult, sensitive matters." Instead of doing that, Diligence International publicly and falsely maligned Villarreal's name, and, in the process, made her a bigger target for organized crime elements that might sit-in-waiting for her to collect the life insurance proceeds.

## VI.
## CAUSES OF ACTION

31. Each of the foregoing paragraphs is incorporated by reference in the following:

Unofficial Copy Office of Chris Daniel District Clerk

**A. Breach of Contract (Transamerica Only)**

32. Villarreal is the beneficiary of the insurance contracts issued by Transamerica. Transamerica breached the terms of the contract by wrongfully denying Villarreal's claim and Villarreal was damaged thereby.

**B. Prompt Payment of Claims Statute (Transamerica Only)**

33. The failure of Transamerica to pay the claim and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

34. Villarreal, therefore, in addition to her claim for damages, is entitled to 18% interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**C. Bad Faith/Deceptive Trade Practices Act (Transamerica and Diligence International)**

35. Defendants are required to comply with Chapter 541 of the Texas Insurance Code.

36. Defendants violated § 541.051 of the Texas Insurance Code by:

(1) making statements misrepresenting the terms and/or benefits of the policy.

37. Defendants violated § 541.060 by:

(1) misrepresenting a material fact or policy provision relating to coverage at issue;

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

(3) failing to promptly provide to Villarreal a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

Unofficial Copy Office of Chris Daniel District Clerk

(4) failing within a reasonable time to affirm or deny coverage of a claim to Villarreal or submit a reservation of rights to Villarreal; and

(5) refusing to pay the claim without conducting a reasonable investigation with respect to the claim;

38. Defendants violated § 541.061 by:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made;

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(4) making a material misstatement of law; and

(5) failing to disclose a matter required by law to be disclosed.

39. At all material times hereto, Villarreal was a consumer who was the beneficiary of insurance products and services purchased from Defendants.

40. Defendants have violated the Texas Deceptive Trade Practices Act ("DTPA") in the following respects:

(1) Defendants represented that the agreement confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

(2) Transamerica failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction

Unofficial Copy Office of Chris Daniel District Clerk

that the consumer would not have entered into had the information been disclosed; and

(3) Transamerica, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)(3) in that Transamerica took advantage of the insured's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Insurance Code.

41. Defendants knowingly committed the acts complained of. As such, Villarreal is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code § 541.152(a)-(b).

**D. Defamation (Transamerica and Diligence International)**

42. Villarreal is a private individual and is neither a public official nor a public figure for any purpose.

43. Diligence International is a non-media defendant.

44. Diligence International negligently or maliciously made and published the above-described statements of fact regarding a private matter that were false, both in their particular details and in the main point, essence, or gist in the context in which they were made.

45. The statements made and published by Diligence International directly and/or indirectly referred to Villarreal.

Unofficial Copy Office of Chris Daniel District Clerk

46. The statements made and published by Diligence International were libelous per se because they impeached Villarreal's honesty, integrity, virtue, or reputation.

47. In the alternative, the statements made and published by Diligence International were libelous and/or slanderous through innuendo and/or implication.

48. Diligence International is strictly liable for the damages caused by the libel and/or slander.

49. In the alternative, Diligence International knew the above-described defamatory statements were false or were reckless with regard to whether the statements were false.

50. In the alternative, Diligence International should have known the above-described defamatory statements were false.

51. Diligence International's defamatory statements proximately caused damages to Villarreal.

52. Villarreal is entitled to recover nominal damages, general damages, special damages, and/or exemplary damages.

**E. Intentional Infliction of Emotional Distress (Diligence International Only)**

53. Diligence International intentionally or recklessly made statements that created a high degree of risk or harm, yet deliberately proceeded to act with conscious disregard or indifference to the risk.

54. Among other things, in the course of telling others that Villarreal was part of a conspiracy to commit insurance fraud and submit a false life insurance claim, Diligence International improperly and illegally disclosed details about the insurance policies of which Villarreal is a beneficiary, the amounts, and who would receive the funds.

Unofficial Copy Office of Chris Daniel District Clerk

55. This conduct placed Villarreal in substantial danger as a single woman living in Mexico who is known to be the beneficiary of an eight-figure life insurance policy and caused her severe emotional distress and mental pain and anguish. Villarreal continues and will continue for a long time in the future to suffer severe emotional distress and mental pain and anguish because of Diligence International's extreme and outrageous conduct.

**F. Conspiracy (Transamerica and Diligence International)**

56. Defendants acted together to accomplish the above-described defamation and intentional infliction of emotional distress. Defendants had a meeting of the minds on the object or course of action and committed one or more of the unlawful, overt acts detailed above.

57. Defendants are jointly and severally liable for the injuries Villareal suffered as a proximate result of Defendants' wrongful actions.

**G. Vicarious Liability (Transamerica Only)**

58. Diligence International committed the torts of defamation and intentional infliction of emotional distress in the course and scope of its agency relationship with Transamerica. Accordingly, Transamerica is vicariously liable for Diligence Internationa's tortious acts.

**H. Ratification (Transamerica Only)**

59. Transamerica ratified the tortious acts of its agent, Diligence International, by approving such conduct after acquiring full knowledge of the conduct with the intent of giving it validity.

**I. Attorneys' Fees**

60. Plaintiff engaged the undersigned attorneys to prosecute this lawsuit against Defendants and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

Unofficial Copy Office of Chris Daniel District Clerk

61. Villarreal is entitled to reasonable and necessary attorneys' fees from Transamerica pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because an attorney represents her, presented the claim to Transamerica, and Transamerica did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

62. Villarreal is further entitled to reasonable attorneys' fees incurred in prosecuting her causes of action through trial and any appeal from both Defendants pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## VII.
## CONDITIONS PRECEDENT

63. All conditions precedent to Villarreal's right to recover have been fully performed, or have been waived by Defendants.

## VIII.
## REQUEST FOR DISCLOSURE

64. Pursuant to Rule 194, Defendants are requested to disclose, within fifty (50) days after service of this request, the information or material described in Rule 194.2(a)-(l).

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that, upon final hearing of the case, she recover all damages from and against Defendants that may reasonably be established by a preponderance of the evidence and that she be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which she may show herself to be justly entitled.

Unofficial Copy Office of Chris Daniel District Clerk

Respectfully submitted,

**DALY & BLACK, P.C.**

By: */s/ Richard D. Daly*
Richard D. Daly
TBA No. 00796429
rdaly@dalyblack.com
ecfs@dalyblack.com
John Scott Black
TBA No, 24012292
jblack@dalyblack.com,
James Willis
TBA No. 24088654
jwillis@dalyblack.com
Melissa Wray
TBA No. 24008614
mwray@dalyblack.com
2211 Norfolk St., Suite 800
Houston, Texas 77098
713.655.1405—Telephone
713.655.1587—Fax

**ATTORNEYS FOR PLAINTIFF BLANCA MONICA VILLARREAL**

Unofficial Copy Office of Chris Daniel District Clerk